## Case No. 2,368.

### CAMPBELL et al. v. The SUNLIGHT.

[2 Hughes, 9;[1] 23 Int. Rev. Rec. 211; 9 Chi. Leg. News, 322.]

District Court, E. D. South Carolina. Jan. 24, 1877.

SHIPPING—DELIVERY BY VESSEL—CUSTOM.

A delivery of freight to a lighter moored alongside and in charge of a vessel for shipment on the vessel, where it was the custom of trade to deliver in that way, and where a receipt was given by the master is a good delivery, and binds the vessel receiving the freight.

[See note at end of case.]

[In admiralty. Libel by Campbell, Wyle & Co. against the bark Sunlight.]

Augustine T. Smythe, for libellants.

BRYAN, District Judge. This was a libel filed to recover the value of sixty tons of phosphate rock, alleged to have been delivered by the libellants to the respondent, and lost while in the possession and custody of the respondent. It appears from the testimony, that on the 17th[2] of October last the brokers of the Sunlight, Messrs. Street Brothers & Co., engaged from the libellants one hundred tons of phosphate rock for said vessel for Amsterdam, they to let libellants know "where and when to send it." On 19th October they instructed libellants to "send about eighty tons phosphate alongside bark Sunlight at Union wharf." This was done by the libellants through the agency of the Marine and River Phosphate Mining and Manufacturing Company, by whose tug a lighter loaded with rock was towed alongside of the Sunlight, and the rock thus delivered to her. Upon such delivery a receipt signed by the master was given in the following words: "October 19th, 1876. Received of M. & R. P. M. & M. Co., 80 tons phosphate rock (estimated) alongside bark Sunlight, at Union wharf; weight unknown. F. Lorensen." The lighter was made fast with the lines of the bark, and from that time remained entirely in her custody and control until the rock was unladen. On the following day, or on the same day, owing

to some crowding between the Sunlight and a vessel on the other side of the dock, the lighter was upset, and the rock sunk in the dock and lost. The master submitted to the libellants a written statement of the facts of such loss, which contains the sentence, "On Thursday, 19th inst., while laying at Union wharf, had a lighter of phosphate rock alongside; said rock belongs to Norwegian bark Sunlight; was taking it in for ballast."

It was proved by testimony that the custom of the port as to the delivery of phosphate rock to vessels was either to have them to go up to the wharf of the Marine and River Phosphate Mining and Manufacturing Company to receive it, or to send it alongside of such vessels in lighters; and that at the time of engaging the freight it was determined which of the two modes of delivery would be adopted. Further, that after the lighter with rock was made fast to the vessel, it was entirely under the control and in charge of the captain and crew of such vessel. That when the rock was so delivered alongside, receipts similar to the one produced in this case were given, and that upon the surrender of such receipts, bills of lading were signed without reference to the fact as to whether the rock was actually on board or not. It was further in testimony that as between the libellants and the Marine and River Phosphate Mining and Manufacturing Company, the former purchased the productions of the latter deliverable as directed, and that a delivery alongside a vessel in the manner above stated was a good delivery, and that upon production of the captain's receipt, the company was paid by the libellants for the rock, and that in this particular case the rock lost had been so paid for by them. It was further in testimony that this trade in phosphate had only been in existence in the port of Charleston for about seven years, and that the custom of delivery proved had been maintained during that entire period. Further, that this rock was in great demand by shipping for ballast, and that this manner of delivery by lighter was a convenience to the vessel, more so in fact than a delivery on the wharf would be.

It is well-settled law that the reception of the goods by the master on board of the ship, or at a wharf or quay near the ship, for the purpose of carriage therein, or by any person authorized by the owner or master so to receive them, binds the ship to the safe carriage and delivery of the goods. See, 1 Pars. Shipp. & Adm. p. 183, and authorities cited. There is no necessary physical connection between the cargo and the ship as a foundation upon which to rest this liability. No well-founded distinction can be made as to the liability of the owner and vessel, between the case of the delivery of the goods into the hands of the master at the wharf for transportation on board of a

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

[2] ["14th" in 23 Int. Rev. Rec. 211.]

particular ship in pursuance of the contract of affreightment, and the case as made after the loading of the goods upon the deck of the vessel; the one a constructive, the other an actual possession. We must look to the substance and good sense of the transaction, to the contract as understood and intended by the parties. Bulkley v. Naumkeag Steam Cotton Co., 24 How. [65 U. S.] 386.

Applying these principles to the case before the court, it would seem clear that the libellants should prevail. The contract of affreightment entered into by them with the bark Sunlight has been fully executed, and the goods delivered in accordance therewith alongside the vessel to the master, and his receipt taken therefor. This was a good delivery. From the moment that the lighter was placed alongside with the rock, it was adopted by the vessel as its own for the purpose of holding such rock until it could be placed on board. The rock was in process of loading by the vessel, and entirely in its possession. The simple fact that the rock was on a floating lighter and not on an immovable quay cannot alter the principle of law involved.

It is therefore adjudged and decreed that the libellants do recover from the respondent the sum of three hundred and sixty dollars as their damages in this case, together with the costs of the same, and that all necessary process issue for the enforcement of this decree.

The decree of the district court was, on appeal, affirmed by the chief justice. [Case unreported.]

[NOTE. That a delivery, to a steamboat or lighter, of goods to be placed aboard another vessel, is a delivery to the latter, see Bulkley v. Naumkeag Steam Cotton Co., 24 How. (65 U. S.) 386; The Edwin v. Same, Case No. 4,301; The Edwin, Id. 4,300; The Oregon, Id. 10,553.]